IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DORIS PERKINS                          :

                                       :

    v.                                 :    Civil Action No. DKC-08-3340

KAISER FOUNDATION HEALTH               :
PLAN OF THE MID-ATLANTIC
STATES, INC.                           :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination and Title VII action are a motion to dismiss and for summary judgment filed by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. (Paper 34) and a motion for judgment on the pleadings filed by Plaintiff Doris Perkins (Paper 43). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted, and Plaintiff's motion will be denied as moot.

## I.    Background

Plaintiff Doris Perkins is an African American female. In 2003, she began working as a staff pharmacist for Kaiser Foundation Plan of the Mid-Atlantic States, Inc. ("Kaiser") at its Largo, Maryland branch. When she started at Kaiser, Plaintiff was employed as an on-call ambulatory care pharmacist.

(Paper 34, at 2).   She became a full-time ambulatory pharmacist in March 2004.  (*Id.*).   Kaiser has a defined chain of command in the pharmacy. Each pharmacist reports to a lead pharmacist or assistant pharmacy supervisor, and this assistant supervisor reports to the pharmacy supervisor.  (*Id.*). Technicians, who are below the pharmacists, ring up customers' orders.  (*Id.*).

In July 2007, Franklin Olagbaju ("Olagbaju") was hired as the pharmacy supervisor.  (Paper 20, at 2).   Prior to the time that Olagbaju was hired, the pharmacy had been without a supervisor for some time.  (Paper 34, at 3, quoting Perkins deposition).   In August 2007, Karen Smithe ("Smithe") became the assistant pharmacy supervisor.  (Paper 34, at 4).   All pharmacists reported to Smithe, and Smithe reported to Olagbaju. (*Id.*).   Plaintiff reports a series of incidents that began after Kaiser hired Olagbaju and Smithe, and that resulted in her eventual discharge on June 23, 2008.

In September 2007, Olagbaju called a meeting of the pharmacy team.  (Paper 20, at 2).   At the meeting, Olagbaju instituted changes to the way that prescriptions would be filled.   Plaintiff reports that staff, including herself, were unhappy with the changes.  (*Id.*).

In November 2007, Plaintiff was issued a warning by Olagbaju for failing to act in a circumstance with a customer that occurred on November 5, 2007.  (Paper 34, at 5).   The

customer had come to the pharmacy counter and repeatedly asked whether her prescription was ready. A technician asked if her name was on the electronic board that displayed when her order would be ready. (Paper 34, at 4). The discussion between the technician and the customer became heated and the customer asked for a supervisor. (Paper 20, at 3). Olagbaju took control of the situation. (Paper 20, at 3). Olagbaju wrote in his warning that Plaintiff should have stepped in to handle the situation before it escalated. (Paper 34, at 4).

On November 8, 2007, Smithe approached Plaintiff to discuss her unwillingness to answer ringing phones in the pharmacy that day. The technician who was "supposed to be helping answer the phones told [Smithe] that [Plaintiff] was not helping answer the phones." (Paper 20, at 4). When Smithe attempted to talk to Plaintiff about the situation, Plaintiff told Smithe, "I know what my job is. I know what I am supposed to be doing." (*Id.*) Olagbaju reprimanded Plaintiff for her conduct toward Smithe. His warning stated that her response was abrupt and her tone of voice was aggressive and disrespectful. (Paper 34, at 6). Plaintiff filed a rebuttal and the warning was reduced to a "verbal warning." (Paper 20, at 4). In her deposition, Plaintiff admitted that her response to Smithe was short, curt and inappropriate. (Paper 34, at 6).

On March 31, 2008, Olagbaju issued another warning to Plaintiff, writing that she did not change a prescription label when asked to do so by a technician. (Paper 20, at 4).

On April 15, 2008, Olagbaju issued a written warning and performance improvement plan to Plaintiff. (Paper 34, at 6). The warning required that Plaintiff improve her performance as a team player and improve her communication skills by interacting with courtesy. (Paper 34, at 6). The performance improvement plan required Olagbaju and Plaintiff to meet on a biweekly basis to evaluate her improvement. On the same day, Plaintiff filed a charge of discrimination and hostile work environment with the Kaiser Permanente human resources department. (Paper 20 ¶¶ 16 and 21).[1]

On May 15, 2008, Plaintiff delayed in refilling a machine that automatically counted pills, causing a delay in processing prescriptions. (Paper 34, at 7). When asked why she had delayed in refilling the machine, Plaintiff asked Smithe why someone else couldn't do it. (*Id.*). Olagbaju gave Plaintiff a final written warning on May 28, 2008. (*Id.*).

On June 2, 2008, Plaintiff wrote again to the human resources department to complain about Olagbaju's treatment of her. (*Id.* at 8). On June 23, 2008, Plaintiff failed to counsel

_____

[1] The specifics of this charge are unknown because no copy was provided.

a customer until specifically asked by Olagbaju. (Paper 34, at 8). After this incident, Kaiser Permanente discharged Plaintiff on July 25, 2008. In his letter of termination, Olagbaju memorialized Plaintiff's performance issues. (Paper 34, at 9).

On November 3, 2008, Plaintiff filed a Charge of Discrimination with the Maryland Commission on Human Rights alleging age discrimination and retaliation, and cross-filed the charge with the Equal Employment Opportunity Commission ("EEOC"). (Paper 34, Attach. 11).

On December 12, 2008 Plaintiff filed a four-count complaint in this action. (Paper 1). She subsequently filed an amended complaint by leave of the court on March 3, 2009. (Paper 20). The amended complaint alleges i) national origin discrimination; ii) continuing harassment; iii) retaliation; and, iv) breach of contract. (*Id.*).

Defendant filed a motion to dismiss and for summary judgment on July 20, 2009. (Paper 34). Plaintiff responded in opposition on September 12, 2009. (Paper 48). Plaintiff filed a motion for judgment on the pleadings on July 28, 2009. (Paper 43). Defendant responded in opposition on August 14, 2009. (Paper 44).

Defendant maintains that the Title VII claims should be dismissed for lack of subject matter jurisdiction because Plaintiff has not exhausted her administrative remedies under

Title VII.   Defendant argues that Plaintiff's claim under 42 U.S.C. 1981 for national origin discrimination should be dismissed because that section does not protect individuals based on their national origin.   Defendant also moves for summary judgment on the remaining counts of retaliation and breach of contract.

## II.  Standards of Review

### A.  Motion to Dismiss under Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).   The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.   *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.   The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

### B.  Summary Judgment Standard

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures*, *Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however,

will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

## III. Analysis

Plaintiff alleges that Defendant violated both 42 U.S.C. 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq* ("Title VII"), by (i) discrimination based on her national origin, (ii) continuing harassment and (iii) retaliation evidenced by her discharge. (Paper 20, at 6-7). The same framework governs Title VII, § 1981 and § 1983 claims, and therefore the analysis may be done simultaneously. *Lightner v. City of Wilmington*, 545 F.3d 260, 263 (4th Cir. 2008). In order to prove subject matter jurisdiction for Title VII claims in federal court, a plaintiff must first exhaust his administrative remedies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Section 1981 has no such requirement. Therefore, the court first turns to Plaintiff's Title VII claims to establish subject matter jurisdiction.

A.    **Subject Matter Jurisdiction under Title VII**

Defendant contends that the court lacks subject matter jurisdiction over Plaintiff's Title VII causes of action because her charge of discrimination, filed with the Equal Employment Opportunity Commission ("EEOC"), is still being processed and she has not been issued a right to sue letter. (Paper 34, at 11).

To assert a Title VII claim in federal court, a plaintiff must first exhaust her administrative remedies by filing a timely charge with the EEOC. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). For cases arising in Maryland, an administrative charge of discrimination must be filed with the EEOC within 300 days. 42 U.S.C. § 2000e-5(e)(1). Title VII further requires that a charge of discrimination "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). Furthermore, "the administrative framework plays a substantial role in focusing the formal litigation it precedes" in that "[i]f 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko,* 429 F.3d at 509 (quoting *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir. 1995)).

Plaintiff filed an administrative complaint with the Maryland Commission on Human Relations and the EEOC on November 3, 2008. (Paper 34, Attach. 11). That charge alleged discrimination based on age and retaliation. (*Id*.). Title VII specifies that if conciliation between the EEOC and an employer fails, or if 180 days pass without the EEOC entering into a conciliation agreement, the Commission must notify the charging party of the failure of conciliation and her right to bring suit within 90 days.

The United States Court of Appeals for the Fourth Circuit ("fourth circuit") has long held that "receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 140 (4th Cir. 1995). In other words, even if the EEOC has not properly issued a right-to-sue letter, if a plaintiff is entitled to one, its actual issuance or receipt is inconsequential. *Id*. *See also Perdue v. Roy Stone Transfer Corp*., 690 F.2d 1091, 1093 (4th Cir. 1982). Therefore, "where neither the complaint nor the amended complaint alleges that the plaintiff has complied with these prerequisites, the plaintiff has not properly invoked the court's jurisdiction under Title VII." *Davis*, at 140 (quoting *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)).

10

Plaintiff filed her original complaint on December 12, 2008, only five weeks after filing her EEOC charge.  She did not possess a right to sue letter, nor was she entitled to one at the date of the filing of her complaint as there is no evidence that the EEOC had completed its investigation.

Plaintiff filed her amended complaint on March 3, 2009, almost 180 days after the filing of her charge of discrimination.  (Paper 20).  She again failed to attach a right to sue letter from the EEOC, nor did she claim jurisdiction because the EEOC had failed to make a conciliation agreement. In none of her pleadings has she claimed to have a right to sue letter, or claimed to be entitled to one.  Rather, in her responsive pleading she argues that "where conduct is covered by both 1981 and Title VII, the detailed procedures of Title VII are rendered a dead letter, as the plaintiff is free to pursue a claim by bringing suit under 1981 without resort to those statutory prerequisites."  (Paper 48, at 3, quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989)).

Plaintiff's interpretation of the Supreme Court's language is incorrect.  *Patterson* supports the ability of a plaintiff, when presented with conduct that is covered by both Section 1981 and Title VII, to pursue a claim by bringing suit under Section 1981 without resort to Title VII's administrative requirements. When a plaintiff brings both Section 1981 and Title VII claims,

11

but fails to exhaust the administrative prerequisites required by Title VII, those claims will be dismissed, leaving only the Section 1981 claims standing. *See Qualls v. Giant Food, Inc.*, 187 F.Supp.2d 530, 534 (D.Md. 2002)(Where the court dismissed Title VII claims for failure to exhaust administrative remedies, but analyzed Section 1981 claims on the merits, as that claim had no administrative prerequisites.). Because Plaintiff has not alleged or shown that she possesses or was entitled to a right to sue letter at the time the original and amended complaints were filed, Plaintiff has not fully exhausted her administrative prerequisites, and this court lacks subject matter jurisdiction to hear Plaintiff's Title VII claims.[2]

### B.   National Origin Claim

Because Plaintiff's employment discrimination claims fail under Title VII for lack of subject matter jurisdiction, the direct discrimination, hostile work environment and retaliation claims remain only under Section 1981. Defendant first argues that Plaintiff's national origin discrimination claim must be dismissed because the statute does not prohibit national origin

---

[2] Moreover, the EEO complaint was based solely on age and retaliation. Thus, any Title VII claim based on national origin would fail even if the others survived. *See Jones v. Calvert Group Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)(Noting that the scope of the plaintiff's federal lawsuit may not generally exceed or deviate from the claims contained the original EEOC charge).

discrimination.    Second,  Defendant  argues  that  Plaintiff's
retaliation claim fails under Section 1981 on the merits.

Section 1981 reads that

> All persons within the jurisdiction of the
> United States shall have the same right in
> every  State  and  Territory  to  make  and
> enforce  contracts,  to  sue,  be  parties,  give
> evidence,  and  to  the  full  and  equal  benefit
> of all laws and proceedings for the security
> of  persons  and  property  as  is  enjoyed  by
> white citizens, and shall be subject to like
> punishment,  pains,  penalties,  taxes,
> licenses,  and  exactions  of  every  kind,  and
> to no other.

42 U.S.C. § 1981(a).   Traditionally, § 1981 has been used to
redress racial discrimination.   *Ana Leon T. v. Federal Reserve
Bank of Chi.*, 823 F.2d 928, 931 (6th Cir. 1987).   The Supreme
Court  clarified  what  protection  Section  1981  afforded
plaintiffs, if any, in its decision in *Saint Francis College v.
Al-Khazraji*, 481 U.S. 604 (1987).   In that case, the Court held
that  "Congress  intended  to  protect  from  discrimination
identifiable classes of persons who are subjected to intentional
discrimination  solely  because  of  their  ancestry  or  ethnic
characteristics. . . If respondent on remand can prove that he
was  subjected  to  intentional  discrimination based on the fact
that he was born an Arab, rather than solely on the place or
nation of his origin, or his religion, he will have made out a
case under 1981."   *Id*. at 613.   The Court's decision in *St.
Francis College* explained that if a claim is based solely on a

person's national origin it is not covered by 1981. At no time has Plaintiff raised any allegations of racial discrimination as a ground for relief. Both in her complaint and in her depositions, she has alleged only that Defendant discriminated against her based on her national origin. Because Section 1981 does not provide for redress in suits alleging discrimination based on national origin, Plaintiff's first and second cause of action for discrimination and for continuing harassment (hostile work environment) will be dismissed.

C.   **Retaliation Claim**

Plaintiff's remaining cause of action is her retaliation claim. To establish a *prima facie* case of retaliation under Section 1981, Plaintiff must produce evidence from which a reasonable jury could find (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Adverse employment actions include any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)(citing *Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir. 2004)). The Supreme Court recently reiterated its belief that

Section 1981 encompasses retaliation claims.  *See CBOCS West, Inc. v. Humphries*, __ U.S. __, 128 S.Ct. 1951, 1954-1955 (2008).

Plaintiff alleges that her discharge in July 2008 was in retaliation for the April 2008 complaint she filed with Kaiser Permanente's human resources department.[3]  Plaintiff clearly satisfies one prong of the test: she was terminated, which constitutes adverse action.  In her April complaint, which is not included in the record and is only referenced in her amended complaint, Plaintiff alleges that she complained of "discrimination creating a hostile work environment." (Paper 20).  In her June complaint, which Defendant attaches to its motion, Plaintiff complained of "discrimination and bias (sic) treatment."  (Paper 34, Ex.20).  She expressed concern that Olagbaju was treating her differently than her co-workers.  (*Id.* at 2).

Section 1981 covers retaliation claims based on an assertion of rights protected by Section 1981.  *Johnson v. Portfolio Recovery Associates, LLC*, 2009 WL 5726007, 11 (E.D.Va. 2009)(citing *CBOCS West, Inc.,* 128 S.Ct. at 1961).  It is unclear what type of discrimination Plaintiff was referencing in

---

[3] Plaintiff's amended complaint claims retaliation only in connection with her April 15, 2008 letter to human resources and does not discuss her June letter.  (Paper 20 ¶¶ 43-46). Defendant, however, addresses the retaliation as if it were in connection with her June 2, 2008 complaint.  (Paper 34, at 20).

her April or June complaints. Assuming that Plaintiff was complaining of discrimination and hostile work environment based on her national origin, as she has done in this lawsuit, Plaintiff does not make a cognizable claim for retaliation, because Section 1981 does not cover national origin rights.

If, however, her complaints were based on racial discrimination, Plaintiff's letters may constitute protected activity. Because her discharge was not long after her complaints, a causal connection could exist. Although she may be able to establish a *prima facie* case of retaliation under Section 1981, Defendant satisfies its burden of showing a non-discriminatory reason for Plaintiff's discharge, and Plaintiff is unable to overcome this reason by claiming pretext. *Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009).

Plaintiff stipulates to and Defendant lays out the series of warnings that Defendant, through Olagbaju, gave to Plaintiff before her discharge in July 2008. She was repeatedly given written warnings and Kaiser instituted two performance plans to help improve her attitude and work performance. (Paper 46, at 3-4; Paper 34, at 3-8). On May 28, 2008, Plaintiff was given a final written warning by Olagbaju.

Olagbaju met with Plaintiff at least three times between June 3 and July 25, 2008 to evaluate and work on her performance at work. (Paper 34 at 8; Paper 46 at 4). At these final

meetings, Olagbaju found Plaintiff indifferent and uninterested in improving her performance.  Therefore, after over six months of continually giving warnings about her need to improve, Defendant discharged Plaintiff.  Despite the fact that the discharge was relatively close in time to Plaintiff's complaints to the human resources department, the problems which prompted her discharge had been ongoing for some time, and the severity of the actions taken by Defendant did not rise or fall based on her letters.  The discharge on July 25, 2008 was the outcome of a series of warnings and meetings that had taken place over the previous month.  It was not the result of retaliation by Defendant.  The court will therefore grant summary judgment to Defendant.

   **D.   Breach of Contract Claim**

   Plaintiff's final cause of action is for breach of contract.  The contract in the instant case is the Kaiser Permanent Employee Handbook ("Handbook").  (Paper 34, Attach. 10).  Plaintiff alleges that Olagbaju issued warnings to Plaintiff without "allowing her to provide her side of the controversy" and that by not allowing her to respond, breached the contract Plaintiff had "as set forth in the Kaiser Permanente Employee Handbook." (Paper 20, at 7).  She argues that on April 15, 2008 she filed a charge of discrimination with the human resources department, and that Defendant did not

complete an investigation of the complaint, or provide her with a written response.   She maintains that this lack of investigation and response violates provisions set out on page 45 of the Handbook.   (Paper 20 ¶ 16).

The page to which Plaintiff refers is Appendix A of the Handbook.   This page, entitled "EEO Complaint Procedure" outlines the process that an employee should take if she believes she has been discriminated against.   (Paper 34, Attach. 10, at 51).   Employees may register complaints with the Director of Human Resources, the EEO Coordinator, or with any supervisor. Upon receipt of the complaint, human resources staff will investigate the allegations.   (*Id.*).   After investigation, human resources staff will work to resolve identified problems, if any, and will provide a written response to the employee who registered the complaint.   An employee who is not satisfied with the outcome of the investigation may appeal to the Vice President of Human Resources.   (*Id.*).

The Handbook used by Kaiser is clear as to its scope - on the first page in the second paragraph it reads:

> This handbook highlights company policies, practices and benefits for the information of employees and is not intended, nor can it be construed, as a legal document or employment contract.   Further, nothing in this handbook alters the right of either the employee or the employer to terminate the employment relationship at any time, with or without cause.

18

(Paper 34, Attach. 10, at 6).   Defendant argues that this paragraph constitutes an express disclaimer that any provisions of the handbook constitute a contract.   (Paper 34, at 22-23). Defendant argues, therefore, that Plaintiff cannot make out a claim for breach of contract.  (*Id.*).

In Maryland, courts have held that some employee handbooks may rise to the level of a binding contract, when they "limit the employer's discretion to terminate an indefinite employment or" they "set forth a required procedure for termination of such employment" if they are "properly expressed and communicated to the employee." *Castiglione v. Johns Hopkins Hospital*, 69 Md.App. 325, 339 (1986)(quoting *Staggs v. Blue Cross of Maryland, Inc.*, 61 Md.App. 381, 392 (1985).  However, "not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Id.*  Finally, "[g]eneral statements of policy are no more than that and do not meet the contractual requirements for an offer." *Id.*  The proper inquiry in this case is whether the employee handbook rises to the level of a contract with Plaintiff.  Because of the express disclaimer in the opening of the handbook, as well as other language reserving powers to Defendant throughout, the Handbook does not constitute a binding contract.

The language quoted above from the introduction in the Handbook indicates that Defendant intends the Handbook to

contain general policy statements.   It also acts as an express disclaimer.   In other words, Defendant "expressly negated, in a clear and conspicuous manner, any contract based upon the handbook . . . ."   *Id.* at 340.   Many courts have found that "an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent."   *Id.* at 340 (citing courts from Maryland, Kansas, California, Michigan, Arizona, Minnesota, and the 6th Circuit Court of Appeals).   In this case, the Handbook also makes plain that Kaiser reserves discretion in handling discipline.   It states that "Kaiser Permanente often exercises its discretion to use progressive discipline to ensure a fair method of disciplining employees. . . . Supervisors are charged with the responsibility of choosing the action to take, depending upon the facts and circumstances of each individual situation."   (Paper 34, Attach. 10, at 45). Plaintiff's breach of contract claim fails because the Kaiser Permanente Employee Handbook did not constitute a contract with its employees, including Plaintiff, and therefore no breach has occurred.   The court will therefore grant summary judgment to Defendant on Plaintiff's breach of contract claim.

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted, and Defendant's motion for summary judgment will be granted.  Because it is now moot, Plaintiff's motion for judgment on the pleadings will be denied.  A separate Order will follow.

_____
                /s/
DEBORAH K. CHASANOW
United States District Judge